**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MEGAN MARIE MCMURRY and** | § | |
| **ADAM SETH MCMURRY, individually** | § | |
| **and as Next Friend of J.M.,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **MO:20-CV-00242-DC** |
| | § | |
| **MIDLAND INDEPENDENT SCHOOL** | § | |
| **DISTRICT, ALEXANDRA WEAVER,** | § | |
| **and KEVIN BRUNNER,** | § | |
| *Defendants*. | § | |

## ORDER GRANTING MISD's MOTION TO DISMISS

BEFORE THE COURT is the Motion to Dismiss the First Amended Complaint filed by

Defendant Midland Independent School District (MISD). (Docs. 14, 15). Plaintiffs Megan Marie

McMurry (Ms. McMurry) and Adam Seth McMurry (Mr. McMurry) (together, Plaintiffs),

proceeding individually and as next friend of J.M., a minor child, filed a response. (Doc. 23).

MISD filed a reply. (Doc. 32). After due consideration, the Court **GRANTS** MISD's Motion to

Dismiss. (Doc. 14).

## I. BACKGROUND

This is a civil rights case arising from an alleged search and seizure executed by

Alexandra Weaver (Officer Weaver) and Kevin Brunner (Officer Brunner) of the Midland

Independent School District Police Department. (*See* Doc. 8). The incident involved Plaintiffs'

children, who were twelve and fourteen years old at the time. *Id.* The Court will set out the

allegations upon which it relies in deciding the instant Motion to Dismiss, accepting all well-

pleaded facts in the First Amended Complaint as true and viewing them in the light most

favorable to Plaintiffs. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The Court

will also rely on documents attached to MISD's Motion to Dismiss because they are referred to

in the First Amended Complaint and they are central to Ms. McMurry's claims against MISD. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (approving the consideration of documents attached to a defendant's motion to dismiss when they are referred to in the complaint and they are central to the plaintiff's claim). The e-mail exchange does not controvert Ms. McMurry's pleadings regarding her relationship with MISD. Rather, the Court finds that the e-mail exchange merely assists Ms. McMurry in establishing the basis of her employment-based claims against MISD, and the Court in deciding whether Ms. McMurry states a claim against MISD based on their relationship. *Id.*

Ms. McMurry worked for MISD as a special education behavior teacher at Abell Junior High School (AJHS) beginning in 2017. *Id.* On April 17, 2018, the board of trustees approved Ms. McMurry's probationary contract for the 2018–2019 schoolyear. (Doc. 15 at 4). The contract was for ten months. *Id.* In relevant part, the 2018–2019 contract contains a provision indicating that the contract will terminate if Ms. McMurry provides "written notice of resignation before the penalty-free resignation date[.]" *Id.* at 5 (citing Tex. Educ. Code § 21.210).

In 2018, Mr. McMurry was in Kuwait and Syria, serving in the Mississippi Army National Guard. (Doc. 8 at 3–4). During Mr. McMurry's deployment, Ms. McMurry planned to travel to Kuwait "to explore a job offer to teach at an international school in Kuwait." *Id.* at 4. When she received the job offer in Kuwait, Ms. McMurry resigned as a teacher for the 2018–2019 school year with MISD's consent. *Id.* at 17. Her resignation was effective on October 19, 2018. (Doc. 15 at 7).

On October 19, Ms. McMurry sent an e-mail noting her husband's deployment, her job offer in Kuwait/Dubai, and her husband's reassignment to Syria. *Id.* Ms. McMurry indicated that because her husband might be reassigned to Syria, she was reconsidering the job offer in

Kuwait/Dubai. *Id.* Ms. McMurry ended her e-mail expressing an interest in continuing her employment with MISD. *Id.* Ms. McMurry indicated that she could work on October 22–24 but that she would be traveling overseas October 25–30. *Id.*

On the same day, the Chief of Human Capital Management responded to Ms. McMurry's e-mail offering to allow Ms. McMurry to continue in her "assignment, at the same compensation and benefits, however, without a contract." *Id.* The e-mail explains that continuing without a contract would allow Ms. McMurry to be "released if circumstances change" and so that Ms. McMurry would not have to seek approval from the board of trustees again if she decided to stay with MISD. *Id.* The Chief of Human Capital Management asked Ms. McMurry to advise whether the arrangement "worked" for her so that he could "align the paperwork under th[e] arrangement." *Id.* Ms. McMurry responded, "Absolutely, this works for me." *Id.*

Ms. McMurry informed AJHS about her travel plans. (Doc. 8 at 5). Additionally, Ms. McMurry arranged for her neighbors, Gabriel (Mr. Vallejos) and Vanessa Vallejos (Ms. Vallejos) (together, the Vallejoses), with whom they socialized on occasion, to care for the two children in her absence. *Id.* The Vallejoses had full responsibility for the children. *Id.* Ms. McMurry also arranged for several colleagues to drive C.M. to school while J.M. stayed at home completing her schoolwork. *Id.*

On October 26, 2018, Officer Weaver, who was stationed at AJHS, was contacted by the school counselor to ask whether Officer Weaver could drive C.M. to school because she was feeling sick. *Id.* at 6. In response, Officer Weaver initiated an investigation into the children. *Id.* Officer Weaver contacted her supervisor, Officer Kevin Brunner (Officer Brunner), and informed him that she learned that Ms. McMurry left her children alone from the school counselor. *Id.* at 6–7. Accordingly, Officer Brunner responded to AJHS. *Id.*

After speaking with AJHS staff, Officer Brunner decided to conduct a "welfare check" on J.M. *Id.* At the McMurry residence, Officer Weaver entered and searched the apartment. *Id.* Moreover, the officers removed J.M. from her parents' home without a court order or parental consent and transported her first to the main office at the apartment complex to conduct an interview and later to AJHS. *Id.*

At AJHS, the officer interviewed the Vallejoses, C.M., and J.M. *Id.* During the investigation, the officers alerted Child Protective Services of the situation. After CPS conducted their investigation, including a call with Ms. McMurry, they closed the case promptly, finding no abuse or neglect. *Id.* 13–14. The CPS investigator informed the parties that the children could leave with Ms. Vallejos that same day. *Id.* at 14.

At approximately 5:00 p.m. on October 26, Ms. McMurry called Officer Brunner inquiring about the events that transpired that morning and afternoon. (Doc. 10-1 at 6). The parties agreed to meet in person on October 31. *Id.*

When Ms. McMurry returned to Midland on October 31, she met with the Chief of Human Capital Management. *Id.* at 17. Ms. McMurry was notified that she was on administrative leave without pay, pending the outcome of the investigation. *Id.* She was also advised that her employment with MISD would continue once the investigation was completed and she was cleared of any charges. *Id.* Ms. McMurry was barred from appearing on campus or attending school-related events. *Id.* She was prohibited from discussing her leave with other employees. *Id.* MISD continued to pay Ms. McMurry's salary through the end of 2018, but she was not asked to continue teaching. *Id.* at 18 Neither was she terminated. *Id.*

Ms. McMurry filed a grievance against MISD on November 16, 2018, complaining about J.M.'s detention and "seeking formal reinstatement." *Id.* However, the grievance was not

considered until the following year. *Id.* at 19. The first stage of the grievance process took place on January 8, 2019. *Id.* Ms. McMurry's grievance was denied on January 21, 2019. *Id.* MISD declined to reinstate Ms. McMurry because she was a temporary employee, and MISD had not extended her teaching contract. *Id.*

Ms. McMurry appealed the decision, and a second-stage hearing took place on February 22, 2019. *Id.* MISD denied Ms. McMurry's request again on March 7, 2019. *Id.* Ms. McMurry filed a level three appeal and made a presentation to MISD's board of trustees on June 24, 2019. *Id.* at 20. Ms. McMurry's grievance was denied. *Id.*

On October 16, 2020, Plaintiffs filed the instant lawsuit under 42 U.S.C. § 1983 against MISD, Officer Weaver, and Officer Brunner. (Doc. 1). In their First Amended Complaint, Plaintiffs allege MISD violated their rights under the Fourth (Count I) and Fourteenth (Count II) Amendments. (Doc. 8 at 24–28). Ms. McMurry also asserts a cause of action for breach of contract and a lack of due process claim against MISD (Count III). *Id.* at 2–29.

MISD moved to dismiss Plaintiffs' claims on December 21, 2020. (Doc. 14) The Motion was fully briefed on January 12, 2021. (*See* Docs. 23, 32).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *See Johnson*, 385 F.3d at 529. Further, the court does not look beyond the face of the complaint to determine whether the plaintiff states a claim under Rule 12(b)(6). *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the

complaint and are central to the plaintiff's claim. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). "[P]laintiffs must allege facts to support the elements of the cause of action in order to make out a valid claim." *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). The court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *See Ferrar v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Likewise, threadbare recitals of a cause of action's elements supported by conclusory statements will not survive a motion to dismiss. *Id.* Factual allegations must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in the dismissal of the complaint with prejudice to re-filing. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

### III.    DISCUSSION

The Court will consider each claim raised against MISD in turn.

### A.  Count One: Fourth Amendment Violation

In count one, Plaintiffs argue MISD "validated and ratified" the acts and omissions of the officers and other MISD employees.[1] (Doc. 8 at 22–24). Plaintiffs claim that when MISD's board of trustees validated the officers' actions, MISD adopted the officers' conduct as their official policy. *Id.* at 22. Moreover, Plaintiffs claim MISD failed to "reign in Officer Weaver" when she engaged in defaming Ms. McMurry and invading her privacy. *Id.* at 22–23. Plaintiffs state that the officers' acts and omissions were a moving force of the violations against them. *Id.* Finally, Plaintiffs claim MISD failed to properly supervise or train its officers and that such failure resulted in the misrepresentation of information, inaccurate reporting, and Ms. McMurry's defamation. *Id.*

As a preliminary matter, to the extent that Plaintiffs attempt to impose § 1983 liability on MISD on a theory of *respondeat superior* for the actions of Officers Brunner and Weaver, the Court dismisses Plaintiffs' Fourth Amendment claim against MISD. *See Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992); *see also Lee-Khan v. Austin Indep. Sch. Dist.*, 567 F. App'x 243, 244 (5th Cir. 2014).

However, MISD may be liable "where the alleged unconstitutional activity is inflicted pursuant to official policy." *Johnson*, 958 F.2d at 93 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). *Monell* explains that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [district] as an entity is responsible under

---

1. The Court has already found that Plaintiffs properly pleaded that the officers unlawfully seized J.M., that Officer Weaver illegally searched Plaintiffs' home, and that both officers violated Plaintiffs' procedural due process rights. (Doc. 38).

§ 1983." *Monell*, 436 U.S. at 694. Plaintiffs must allege (1) an official policy or custom; (2) a policymaker; (3) a constitutional violation; and (4) that the policy or custom was the moving force behind the constitutional violation." *See Howard v. City of Kerrville, Tex.*, No. 5:05-CA-0970-XR, 2006 WL 1073461, at *6 (W.D. Tex. Apr. 17, 2006).

Plaintiffs[2] suggest that MISD had a policy or custom of violating students' Fourth Amendment rights for three reasons. First, they argue that MISD ratified the officers' decision to seize J.M. and transport her to AJHS. Second, they claim that MISD had a policy of failing to adequately train its police officers. Third, Plaintiffs assert that MISD had a policy or custom that resulted in a constitutional violation. The Court will first address the ratification argument.

### 1. Ratification

Plaintiffs base MISD's § 1983 liability for the Fourth Amendment violation on MISD's alleged ratification of the officers' conduct. (Doc. 8 at 22–24). Plaintiffs specifically plead that Ms. McMurry filed a grievance with MISD, complaining about J.M.'s detention and seeking Ms. McMurry's formal reinstatement. (Doc. 8 at 18). Plaintiffs contend that MISD's board of trustees, who are entrusted with lawmaking authority, officially adopted the officers' decision to remove J.M. from the home when it denied her grievance and found that the officers' conduct was "*not* inappropriate" and that the officers acted "in good faith" to ensure the children were safe. *Id.* (emphasis in original). MISD's counsel informed the board of trustees through the grievance process that the children were taken to AJHS so that MISD could figure out what they "*needed to do as a school district* to best take care of our students and make sure they [are] safe." *Id.* at 20 (emphasis in original).

---

2. The claim for illegal seizure can only be raised by J.M. However, because she is a minor, her parents may raise the claim on her behalf as next friends under Federal Rule of Civil Procedure 17. *See Connor v. Deckinga*, No. 4:10-CV-855-Y, 2011 WL 1527082, at *3, 3 n.2 (N.D. Tex. Apr. 20, 2011) (quoting Fed. R. Civ. P. 17(c)(2)).

As a preliminary matter, Plaintiffs' do not plead that Ms. McMurry filed a grievance with MISD concerning Officer Weaver's alleged illegal entry and search of Plaintiffs' home. (*See* Doc. 8). Neither do Plaintiffs plead that those specific acts were "ratified," "validated," or in any way approved by MISD or its board of trustees. *Id.* Accordingly, Plaintiffs' ratification claim premised on the alleged illegal entry and search of Plaintiffs' home against MISD is dismissed. The only remaining ground for the ratification claim against MISD is J.M.'s seizure. (*See* Doc. 8 at 22–24).

In *Praprotnik*, the Supreme Court held that if "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). However, the ratification theory Plaintiffs seek to apply is only used in "extreme factual situations." *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009). Accordingly, a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom "unless the subordinate's actions are sufficiently extreme." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009).

Plaintiffs plead that MISD ratified the officers' conduct "through its high-ranking personnel who endorsed the officers' conduct, through Ms. McMurry's grievance complaint, and by their repeated defense of the police officers' actions [toward] Ms. McMurry during the grievance process." (Doc. 8 at 22). Plaintiffs plead that MISD "officially adopted and sanctioned the police officers' interactions with J.M., converting [the officers' conduct] into the official policy of [MISD]" when the board of trustees "validated and ratified" the officers' conduct at the June 2019 board meeting. *Id.* Further, Plaintiffs assert that MISD officials also validated the

officers' actions, including the principal, the assistant principal, MISD's director of secondary education, and MISD's chief academic officer. *Id.* at 22–23.

As to AJHS's principal and assistant principal and MISD's director of secondary education and chief academic officer, Plaintiffs do not plead that those officials were "authorized policymakers." (Doc. 8 at 22–24). Neither do Plaintiffs argue that the school officials were authorized policymakers in their response to MISD's Motion to Dismiss. (Doc. 23 at 17–20). Rather, Plaintiffs focus their argument on the board of trustees, arguing that the board is MISD's "final policymaker." *Id.* at 19 (citing Tex. Educ. Code § 11.0151).

The ratification theory only applies when an "authorized policymaker" approves a subordinate's decision. *See Peterson*, 588 F.3d at 848. It is not "necessarily fatal at the pleading stage that the [P]laintiffs fail[] to articulate 'the specific identity of the policymaker.'" *Taylor v. Hartley*, 488 F. Supp. 3d 517, 538 (S.D. Tex. 2020) (citing *Groden v. City of Dall., Tex.*, 826 F.3d 280, 285 (5th Cir. 2016)). However, Plaintiffs must nonetheless "plead *facts* that show [the officers] acted pursuant to a specific official policy, which was promulgated or ratified by the *legally authorized policymakers*." *Id.* (first emphasis in original) (citing *Groden*, 826 F.3d at 282). Here, Plaintiffs do not plead facts that show that the individuals listed above, other than the board, were legally authorized policymakers.[3] (*See* Doc. 8). Accordingly, Plaintiffs' Fourth Amendment claim based on the alleged ratification of the officers' actions by AJHS's principal and assistant principal and MISD's director of secondary education and chief academic officer are dismissed. *See, e.g.*, *Salazar v. U.T.M.B. C.M.C.*, No. 5:19-CV-124-BQ, 2020 WL 6556031, at *4 (N.D. Tex. Jan. 27, 2020), *report and recommendation adopted sub nom. Salazar v. U.T.M.B. C.M.C*, No. 5:19-CV-124-C, 2020 WL 5757491 (N.D. Tex. Sept. 28, 2020) (noting the

---

3. Plaintiffs, at most, allege that the MISD employees were "high-ranking personnel." (Doc. 8 at 22). However, whether the employees were high-ranking or not does not indicate that they have "final policymaking authority" to subject MISD to liability. *See Praprotnik*, 485 U.S. at 113.

plaintiff did not plead any facts demonstrating that certain defendants had any policymaking authority and dismissing the claim against those defendants). The fact that these school officials served on the grievance committee does not change the Court's conclusion because Plaintiffs do not plead facts that show that the grievance committee has the authority to make policy for MISD. (*See* Doc. 8); *see also* Tex. Educ. Code § 11.151 ("[T]he trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district."). That leaves the board of trustees' alleged ratification and approval of J.M.'s seizure.

Plaintiffs plead that Ms. McMurry presented her grievance to the board on June 24, 2019. (Doc. 8 at 20). After considering Ms. McMurry's grievance, the board "unanimously voted to deny the grievance, thus ratifying acts and omissions of subordinates, including [the actions of the officers] and other school district personnel and staff."[4] *Id.*

Based on the Fifth Circuit's standard, Plaintiffs' allegations regarding the board's decision to deny Ms. McMurry's grievance, thus, ratifying the officers' conduct, are insufficient. Plaintiffs do not plead facts to show the *knowing approval* of a policymaker. Specifically, Plaintiffs do not allege that the policymaker, the board of trustees, was connected to the policy or conduct subject to ratification, making it responsible for the alleged constitutional violation.

Even if Plaintiffs had alleged facts to establish a ratification claim, this case does not present an "extreme factual scenario" as required by *Snyder. Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (explaining that the ratification theory can only be used in extreme factual

---

4. Plaintiffs also rely on a statement made by MISD's attorney who appeared at the final hearing before the board. (Doc. 8 at 20). However, as explained in this Order, what matters is the board's alleged ratification of the officers' conduct, not what other actors, who are not authorized policymakers, did or said in relation to J.M.'s seizure.

situations). Here, the officers' single act of misconduct[5] is not as "incompetent and catastrophic [a] performance as that of the officers in *Grandstaff*." *Fuentes v. Nueces Cnty., Tex.*, 689 F. App'x 775, 779 (5th Cir. 2017) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985)). In *Grandstaff*, six police officers were in pursuit of someone suspected of a minor traffic violation and shot at an innocent bystander who they mistook for the suspect. 767 F.2d at 171. Moreover, this case did not involve the collective action of several officers and multiple bad acts or a culture of misconduct at MISD. (*See* Doc. 8). The facts in the pleadings do not "support an inference that the [officers] acted [unlawfully] because they feared no authoritative retribution or recognized that the policymaking authority in fact condoned such [unlawfulness]." *DeShay v. Bastrop Indep. Sch. Dist.*, 180 F.3d 262, 262 (5th Cir. 1999).

Other district courts have similarly dismissed § 1983 claims based on ratification. Those courts held that controlling precedent forecloses the ratification claim when the facts do not present an extreme factual situation like the circumstances in *Grandstaff*. *See, e.g., York v. Welch*, No. 1:18-CV-522, 2019 WL 10271216, at *12 (E.D. Tex. Aug. 12, 2019), *cert. denied*, No. 1:18-CV-522, 2020 WL 5269590 (E.D. Tex. Mar. 16, 2020) (noting that although the officer may be liable for a constitutional violation, the facts of the case were not analogous to the "extreme factual situation" in *Grandstaff*); *see also Simms v. City of San Antonio, Tex.*, No. 5:18-CV-00211-DAE, 2019 WL 7900484, at *9 (W.D. Tex. May 24, 2019) ("[R]atification theories in this Circuit are limited to 'extreme factual situations.'"); *Flores v. Harris*, No. CV H-17-3817, 2019 WL 3216581, at *9 (S.D. Tex. July 17, 2019) (same); *Miller v. City of E. Mountain*, No. 2:17-CV-00496-JRG-RSP, 2019 WL 1294280, at *1 (E.D. Tex. Mar. 21, 2019) ("This case does not rise to the level of an 'incompetent and catastrophic performance' and instead appears

---

5. Plaintiffs plead that other parents filed complaints against the officers involved in J.M.'s seizure. (Doc. 8 at 23–24). However, they do not plead that the misconduct involved similar conduct. *Id.*

much less exceptional than even *Snyder*, so the ratification theory is inapplicable."); *Waller v. City of Fort Worth Tex.*, 515 F. Supp. 3d 577, 589 (N.D. Tex. 2021) (refusing to apply ratification after comparing the factual scenario in *Snyder*). Thus, Plaintiffs do not state a cognizable ratification claim.

In sum, Plaintiffs fail to provide a legal or factual basis for concluding MISD ratified J.M.'s unlawful seizure by the officers.

### 2. Failure to Train or Supervise

A § 1983 failure to train claim against a school district has three elements: "(1) that the school district's training or supervision procedures were inadequate, (2) that the school district was deliberately indifferent in adopting such policies, and (3) that the inadequate policies directly caused the violations in question." *Chupka ex rel. C.C. v. Pflugerville Indep. Sch. Dist.*, No. 1:21-CV-232-RP, 2021 WL 2722812, at *4 (W.D. Tex. Mar. 29, 2021) (citations omitted).

Here, Plaintiffs do not plead how MISD's training program and policies were inadequate. (*See* Doc. 8 at 23–24). They do not allege that the training program did not comply with Texas state law. *Id.* Plaintiffs do not plead that MISD does not require its officers to complete state-mandated training or that MISD diverged from its routine discipline procedures in addressing the officers' conduct. For these reasons, the Court finds Plaintiffs have not sufficiently pled a failure to train or supervise claim.[6] *See, e.g.*, *Belcher v. Williamson Cnty., Tex.*, No. AU-17-CA-00153-SS, 2018 WL 1353937, at *4 (W.D. Tex. Mar. 15, 2018).

### 3. Policy or Custom

---

6. Plaintiffs' focus on whether Officer Brunner properly supervised Officer Weaver is misplaced. (Doc. 23 at 14). The § 1983 failure to train or supervise claim is lodged at MISD. Thus, the inquiry is whether MISD properly supervised and trained its employees. *See Belcher*, 2018 WL 1353937, at *4 (considering the county's training program to determine whether the plaintiff stated a failure to train or supervise claim); *see also Sneed v. Austin Indep. Sch. Dist.*, 487 F. Supp. 3d 584, 597 (W.D. Tex. 2020) (holding that the plaintiff cannot hold the school district liable under a failure to supervise § 1983 claim for the associate superintendent's alleged failure to enforce school district policies and procedures).

Plaintiffs generally allege that the officers acted "pursuant to the customs and policies" of MISD. (Doc. 8 at 21). They plead that the officers' acts and omissions "resulted from the official custom of the school district so as to fairly represent its policy." *Id.* at 22. Further, they assert that the "policy or custom of the school district" operated "as the direct cause of *their* harm" and that the policy or custom "was unconstitutional on its face." *Id.* (emphasis added).

As noted above, a school district can be liable under § 1983 if an official policy or custom causes a constitutional violation. *See Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). An official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson*, 588 F.3d at 847.

Plaintiffs do not point to an official policy, nor do they plead facts to show a widespread practice that is so common and well-settled as to constitute a custom that represents an MISD policy. (*See* Doc. 8 at 22–24). Although Plaintiffs allege that several parents have complained of the officers' behavior, they do not plead that the behavior complained of was similar to that present in this case. *See, e.g.*, *Belcher*, 2018 WL 1353937, at *3 (considering the similarity between other alleged misconduct by the deputies and the conduct alleged in the case). Plaintiffs also argue that several AJHS employees witnessed and assented to J.M.'s detention and interview at AJHS. (Doc. 23 at 15). However, this single incident does not show a "widespread practice that is so common." *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003) (considering allegations regarding an alleged widespread custom).

The Court holds that Plaintiffs fail to allege facts suggesting MISD has an unwritten policy or custom condoning unlawful seizures by its police officers. Even if they had, Plaintiffs fail to allege that the unidentified custom or policy is the "moving force" behind the allegation of

unlawful seizure. Plaintiffs use key language to suggest that an unidentified policy caused the illegal seizure, but they do not plead facts to support that conclusion. Accordingly, Plaintiffs do not state a claim against MISD under § 1983 for the propagation of an unconstitutional policy or custom.

Moreover, Plaintiffs' pleading is not sufficiently specific to warrant allowing discovery on MISD's policies or procedures. Although district courts have allowed pleadings to survive a motion to dismiss with minimal, general factual allegations about what the policy in question is, in those cases the plaintiffs pled that the training was deficient and provide *some* facts "identifying the training and demonstrating the alleged inadequacy." *Dawes v. City of Dall.*, No. 3:17-CV-1424-X-BK, 2021 WL 1200229, at *3 (N.D. Tex. Mar. 12, 2021), *report and recommendation adopted sub nom.*, No. 3:17-CV-1424-X-BK, 2021 WL 1192222 (N.D. Tex. Mar. 30, 2021) (citation omitted). Here, Plaintiffs merely allege that MISD failed to properly supervise or train its police officers" and that MISD's failure "resulted in the police officers' failure to understand their powers as peace officers, their professional duties to diligently investigate complaints, and their duty to accurately report and not misrepresent information they collect in connection with criminal investigations." (Doc. 8 at 23–24). Moreover, Plaintiffs plead the alleged "lack of training resulted in Officer Weaver gratuitously disclosing information about a pending investigation to others before indictment." *Id.* at 24. Plaintiffs conclude that the "need for more training and supervision was obvious . . . ." *Id.* Missing from the pleading is how MISD failed to train its police officers and how the training of police officers is unconstitutionally inadequate. *Id.*

For these reasons, the Court holds that Plaintiffs' failure to train claim does not survive MISD's Motion to Dismiss.

## B. Count Two: Fourteenth Amendment Violation Based on the Officers' Actions

Like in count one, Plaintiffs plead that MISD ratified the officers' actions and omissions, giving rise to a Fourteenth Amendment claim against MISD. (Doc. 8 at 24–28). Paragraphs sixty-five through seventy-five (Count II) track the language in paragraphs fifty-five through sixty-four (Count I). (Doc. 8 at 22–28). The only difference is the recitation of the law that applies to an unlawful seizure, substantive due process, and procedural due process. *Id.* Moreover, Plaintiffs' allegations concerning Count II are premised on the same facts as those for Count I. *Id.*

For the same reasons the Court finds Plaintiffs cannot raise a claim under § 1983 against MISD for the officers' conduct, Plaintiffs claim under § 1983 for the alleged Fourteenth Amendment violation also fails. Specifically, Plaintiffs do not identify an official policy or custom that *caused* the violation of their due process. *See Peterson*, 588 F.3d at 847, 848 (explaining that a § 1983 claim requires an official policy, a constitutional violation, and a causal link between the official policy and the constitutional violation). Moreover, Plaintiffs do not plead facts to show that the board of trustees knowingly ratified the officers' conduct. *See id.* at 848 (noting that the authorized policymaker must approve the subordinate's decision *and* its basis). However, even if they had, the facts of this case are not so extreme such that ratification might be appropriate. *Belcher*, 2018 WL 1353937, at *3. Finally, Plaintiffs do not plead facts that suggest how MISD failed to properly train its police officers, which is necessary to assert a plausible § 1983 claim for failure to train or supervise. *See id.* at *4 (noting that a failure to train or supervise claim requires specificity about how the municipality's training program and policies were inadequate). There are no facts regarding the inadequacies of MISD's training program, disciplinary procedures, and oversight of their police officers. (*See* Doc. 8).

In sum, Plaintiffs fail to raise a § 1983 claim against MISD based on the officers' alleged violation of Plaintiffs' due process.

### C. Count Three: Employment-Based Claims

Ms. McMurry raises a Fourteenth Amendment procedural due process claim against MISD based on her purported employment contract with MISD. (Doc. 8 at 28–29). She also raises claims for breach of contract and lack of due process under the Texas Education Code against MISD. *Id.*

#### 1. Fourteenth Amendment Procedural Due Process

Ms. McMurry alleges that she had a contract with MISD through the end of the 2018–2019 schoolyear. (Doc. 8 at 28–29). According to Ms. McMurry, MISD failed to pay her through the end of the term and provide her with the fringe benefits of her employment. *Id.* at 29. Ms. McMurry alleges that MISD terminated her, depriving her "of property rights without due process of law." *Id.* MISD argues that Ms. McMurry cannot show she had a property right in her employment through the end of the 2018–2019 schoolyear. (Doc. 14 at 19–20).

"The Supreme Court has determined that procedural due process requires a showing of a violation of [the p]laintiff's life, liberty, or property interest." *Madison v. Hous. Indep. Sch. Dist.*, 47 F. Supp. 2d 825, 830 (S.D. Tex. 1999), *aff'd*, 207 F.3d 658 (5th Cir. 2000). In this case, Ms. McMurry must first show a legitimate claim of entitlement to the benefit taken away by the state. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972). "A protected property interest in employment exists only when the employee has 'a legitimate claim of entitlement to it.'" *Conley v. Bd. of Tr. of Grenada Cnty. Hops.*, 707 F.2d 175, 179 (5th Cir. 1983) (citing *Roth*, 408 U.S. at 577). A

property interest is "defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Madison*, 47 F. Supp. 2d at 830. Accordingly, the issue here is whether, under Texas law, Ms. McMurry had the requisite express or implied right to continued employment at MISD. *See Conley*, 707 F.2d at 179.

Texas is an employment-at-will state. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex. 1985). As a result, employment contracts are terminable at will absent a specific contractual provision to the contrary. *Id.* Because an at-will employee can be terminated at any time for any reason or no reason, an at-will employee has no property interest in continued employment. *Irby v. Sullivan*, 737 F.2d 1418, 1422 (5th Cir. 1984).

The pleadings show that Ms. McMurry worked for MISD the 2017–2018 schoolyear. (Doc. 8 at 3 ¶ 10). MISD offered Ms. McMurry another ten-month probationary contract for the 2018–2019 schoolyear. (Doc. 15 at 4–6). Ms. McMurry signed the 2018–2019 contract on August 2, 2018. *Id.* at 6. Sometime after she signed the probationary contract, Ms. McMurry resigned with MISD's consent. *Id.* at 17 ¶ 44. Ms. McMurry's resignation became effective on October 19, 2018. *Id.* The probationary contract explicitly stated that the contract would terminate if Ms. McMurry provided written notice of resignation as required under Texas Education Code § 21.210, which allows teachers to resign at any time with the board of trustees' consent. *Id.* at 5 ¶ 8; *see also* Tex. Educ. Code § 21.210(b). Accordingly, Ms. McMurry's 2018–2019 probationary contract with MISD terminated on October 19, 2018, the date Ms. McMurry's resignation became effective. (Doc. 15 at 7). Thus, under Texas law, Ms. McMurry did not have an "express right" to continue employment at MISD under the probationary contract.

Ms. McMurry argues that the probationary contract was reinstated based on MISD's treatment of Ms. McMurry after the events that transpired on October 26. (Doc. 8 at 18 ¶ 46). However, the facts do not support Ms. McMurry's argument.[7] Rather, the pleadings suggest that Ms. McMurry sent the Chief of Human Capital Management an e-mail titled, "Retracting my resignation due to change in deployment." (Doc. 15 at 7). In that e-mail, Ms. McMurry sought to continue her employment with MISD after she submitted her resignation. *Id.* The Chief of Human Capital Management did not accept Ms. McMurry's "retraction." *Id.* Instead, he proposed that Ms. McMurry continue to work for MISD "without a contract." *Id.* This way, the Chief of Human Capital Management explained, Ms. McMurry could continue working at MISD while she decided whether to take the job overseas and, if she decided to take the job in Kuwait/Dubai, Ms. McMurry would not have to seek approval from the board of trustees to resign, which would have been required if Ms. McMurry's probationary contract was somehow reinstated.[8] *See* Tex. Educ. Code § 21.210(b). Ms. McMurry accepted this new arrangement on October 19. *Id.* The e-mail indicates that if Ms. McMurry accepted the offer to continue working at MISD without a contract, the Chief of Human Capital Management would "align the paperwork under [the parties'] arrangement." *Id.* However, it is not clear whether the parties executed a written agreement. *Id.* Accordingly, the pleadings do not show that the probationary contract was reinstated or that Ms. McMurry signed a different employment contract with MISD.

Ms. McMurry pleads that she continued her duties with MISD and that MISD continued paying her through 2018. Thus, the Court will consider whether Ms. McMurry had an implied right to continued employment at MISD. *See Conley*, 707 F.2d at 179.

---

7. At this stage, the Court need not take as true conclusory allegations or unwarranted factual inferences. *See Ferrar*, 484 F.3d at 780. Here, Ms. McMurry does not plead *facts* that show that her probationary contract was reinstated. Rather, she makes conclusory allegations based on unwarranted factual inferences.

8. The Court notes that returning to "probationary status" requires additional steps and that Ms. McMurry does not plead those steps took place when her probationary contract was allegedly reinstated. *See* Educ. § 21.106.

Ms. McMurry asserts that MISD agreed to allow Ms. McMurry to continue teaching at MISD *until* Ms. McMurry decided whether she was going to take the job in Kuwait.[9] *Id.* at 17. Thus, Ms. McMurry had the unilateral power to terminate the relationship at any time, meaning her employment with MISD was for an indefinite term. (Doc. 15 at 7). This indicates an "at-will" employment. *See Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 71 (Tex. App.—Corpus Christi 2001, no pet.) ("Texas follows the doctrine of employment-at-will, and employment for an indefinite term may be terminated at will and without cause."). Moreover, if a teacher's contract ends, and the contract is not renewed but the teacher's employment continues with the employer's permission, the employment is at will. *Cf. Fitts v. Crain*, 108 F. App'x 865, 868 (5th Cir. 2004) (holding that once a term contracted ended and the teacher's employment was not renewed, the teacher continued her employment at will). Finally, the Court notes that Ms. McMurry does not show that MISD's offer to continue employing Ms. McMurry while she decided whether to accept the job offer in Kuwait unequivocally expressed an intent to be bound not to terminate the employment except under clearly specified circumstances or conditions, which is required to avoid the effects of the employee-at-will doctrine. *See Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 488 (Tex. 2002).

Ms. McMurry's contention that MISD could only employ her pursuant to a probationary, continuing, or term contract does not change the Court's analysis. That allegation is relevant to whether MISD violated Texas school law, but not to whether Ms. McMurry had a property interest in her employment. Further, Ms. McMurry does not cite case law suggesting that MISD

---

9. Ms. McMurry also pleads that the Chief of Human Capital Management told Ms. McMurry "that her job would be waiting for her once the investigation was completed and she was cleared of any wrongdoing." (Doc. 8 at 17). However, general assurances that an employee's job is secure do not constitute a binding contract. *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 556 (Tex. App.—San Antonio 1998, no pet.) ("General promises or assurances that an employee will not be discharged if he performs satisfactorily or that the employee will only be terminated for 'good cause' do not constitute a binding contract. An employee must reveal a more formal agreement with the employer to modify at-will employment.").

was required to employ her under one of the three contracts listed in the Texas Education Code. (Doc. 23).

At-will employment does not grant Ms. McMurry a protected property interest. *See Bumstead v. Jasper Cnty.*, 931 F. Supp. 1323, 1329 (E.D. Tex. 1996) (noting that a property right may be created if the contract mutually binds the employer and employee and is not subject to unilateral modification). Accordingly, the Court concludes that Ms. McMurry's allegations are insufficient with respect to a property interest. *See McCall v. Dall. Indep. Sch. Dist.*, 169 F. Supp. 2d 627, 633 (N.D. Tex. 2001) (noting that it was unclear whether the contract precluded termination at will). In sum, Ms. McMurry fails to state a claim upon which relief can be granted for her procedural due process claim against MISD.[10]

### 2. State Law Claims

Ms. McMurry's breach of contract claim is premised on her alleged employment with MISD. (Doc. 8 at 28–29). Ms. McMurry specifically pleads that MISD failed to pay her and deprived her of fringe benefits under her employment contract with MISD. *Id.* at 29. MISD argues that it had the right to terminate Ms. McMurry's at-will employment and that Ms. McMurry's failure to appeal to the commissioner mandates dismissal of Plaintiff's state law claims. (Doc. 14 at 17–19, 21).

As noted above, Ms. McMurry's employment with MISD was at will. (Doc. 15). Ms. McMurry could unilaterally terminate her relationship with MISD if she decided to work overseas. *Id.* Likewise, MISD could terminate Ms. McMurry for good cause, bad cause, or no cause at all. *See, e.g.*, *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). Accordingly, Ms. McMurry cannot state a breach of contract claim.

---

10. Ms. McMurry does not raise a federal substantive due process claim in relation to her termination. (Doc. 8 at 28–29) (alleging that the Fourteenth Amendment "prohibits the deprivation of rights without due process of law").

However, even if the facts alleged showed that Ms. McMurry's probationary contract was reinstated, her breach of contract claim fails because she did not exhaust her administrative remedies, as required under the Texas Education Code.

The Texas Legislature established the Texas Education Agency, the office of the Commissioner of Education, the State Board of Education, and local school districts throughout the state in response to the Texas Constitution's mandate that the Legislature "establish and make suitable provision for the support and maintenance of the efficient system of public free schools." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 345 (Tex. 2016) (citation omitted). The commissioner serves as the educational leader of the state. Tex. Educ. Code § 7.055(b)(1).

Under § 7.057, "a person may appeal in writing to the commissioner if the person is aggrieved by: (1) the school law of this state; or (2) actions or decision of any school district board of trustees that violate the school laws of this state or a provision of a written employment contract between the school district and a school employee, if a violation causes or would cause monetary harm to the employee." Educ. § 7.057(a). Accordingly, "a party whose claims involve a breach of contract claim with a school district must exhaust the statutorily provided administrative remedies before turning to the courts for relief." *O'Neal v. Ector County Indep. Sch. Dist.*, 221 S.W.3d 286, 292 (Tex. App.—Eastland 2006), *aff'd on other grounds*, 251 S.W.3d 50 (Tex. 2008); *see also Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 657 (Tex. 2013) ("School district employees . . . alleging a breach of an employment contract where facts are in dispute, generally must exhaust administrative remedies by bringing an appeal to the Commissioner."). "Until the Commissioner of Education issues a final ruling with respect to a claim for breach of an employment contract, a plaintiff is deemed not to have exhausted her

administrative remedies and may not bring an independent breach of contract action." *Garcia v. Corpus Christi Indep. Sch. Dist.*, 866 F. Supp. 2d 646, 660 (S.D. Tex. 2011) (citations omitted).

Ms. McMurry does not plead that she appealed any decision of MISD regarding her employment status to the commissioner. (Doc. 8). Rather, she argues that the Texas Education Code does not require her to appeal MISD's decision, citing § 7.057(e). (Doc. 23 at 24–25). Section 7.057(e) limits the requirement that a person appeal to the commissioner first. Educ. § 7.057(e). Specifically, § 7.057 does not apply to a case in which Subchapter G, Chapter 21, applies. Educ. § 7.057(e)(1). Subchapter G of Chapter 21 concerns appeals to the commissioner of education. *Id.* It allows teachers to appeal the board of trustees' decision not to renew a contract or to terminate the teacher. Educ. § 21.301(a). However, Ms. McMurry argues that § 21.301, which requires the teacher to appeal a nonrenewal or termination decision to the commissioner, does not apply to her or that she could not comply with § 21.301 because the board of trustees never acted to "non-renew" her contract. (Doc. 23 at 25). Ms. McMurry thereby concedes that Subchapter G of Chapter 21 does not apply to her. Thus, Ms. McMurry was required to appeal MISD's decision regarding Ms. McMurry's alleged employment contract with MISD to the commissioner under § 7.057(a). *See* Educ. § 7.057(a), (e). Moreover, Ms. McMurry's failure to appeal to the commissioner deprives this Court of jurisdiction to hear Ms. McMurry's breach of employment contract claim against MISD.

Likewise, Ms. McMurry's "lack of due process under Texas Education Code" claim must be dismissed for failure to exhaust her administrative remedies. Ms. McMurry pleads that MISD did not follow the procedures in the Texas Education Code for discharging teachers. (Doc. 8 at 29). As noted previously, § 7.057(a)(2)(A) requires persons to appeal to the commissioner actions of any school district board of trustees that violates the "school law of this state[.]" Educ.

§ 7.057(a)(1)(A). The allegation here is that MISD violated the Texas Education Code when it failed to follow the outlined procedures. Accordingly, Ms. McMurry was required to exhaust her administrative remedies regarding her claim for violation of the Texas Education Code. *See Rascon v. Austin I.S.D.*, A-05-CA-1072 LY, 2006 WL 2045733, at *5 (W.D. Tex. July 18, 2006), *report and recommendation adopted*, A-05-CA-1072-LY, 2006 WL 8432651 (W.D. Tex. Sept. 5, 2006) ("Texas law requires an aggrieved party to exhaust administrative remedies if the subject matter concerns administration of school laws or the written provisions of an employment contract.").

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** MISD's Motion to Dismiss. (Doc. 14).

The Court further **OVERRULES** Plaintiffs' objection to Document 15.

It is so **ORDERED**.

SIGNED this 14th day of September, 2021.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE