**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **MEGAN MARIE MCMURRY, et al.,**<br>　　　　**Plaintiffs,** | § | |
| | § | |
| **v.** | § | **MO:20-CV-00242-DC** |
| | § | |
| **ALEXANDRA WEAVER and<br>KEVIN BRUNNER,**<br>　　　　**Defendants.** | § | |

## <u>ORDER DENYING MOTION FOR NEW TRIAL</u>

Before the Court is Plaintiffs' Motion for New Trial (Phase II) (Doc. 248). After an agreed bifurcated[1] jury trial before this Court, the jury found Defendants Alexandra Weaver and Kevin Brunner liable on Plaintiffs' constitutional claims in Phase I and then returned a Phase II verdict awarding damages. Plaintiffs now ask the Court to retry Phase II. Their request rests principally on several statements made during Defendant Weaver's closing argument. Plaintiffs contend that those statements appealed to juror sympathy, relied on facts outside the record, misstated Texas judgment-enforcement law, violated the Court's limine rulings, and created the false impression that Defendants would personally bear any judgment without support from Midland Independent School District, insurance, or any other indemnifying source. Plaintiffs also contend that the Court's limine rulings concerning the subsequent criminal proceedings prevented them from presenting a complete damages narrative.

Having reviewed the Motion, the response and reply, as well as the relevant law and the record, the Motion is **DENIED**. The Court does not endorse the challenged argument.

---

[1] The trial was bifurcated into two phases. The first phase concerned whether there was a constitutional violation while the second concerned damages.

Some of it pushed close to, and in places past, the line that separates forceful advocacy from improper appeal. But Rule 59 does not ask whether every word of closing argument was ideal or even proper. It asks whether the challenged argument, viewed in the full trial context, irreparably prejudiced the verdict. Here, Plaintiffs did not contemporaneously object; the jury was instructed that counsel's arguments were not evidence; Plaintiffs had the final word and used rebuttal to correct at least one allegedly unsupported defense assertion; the challenged statements were brief in relation to the full Phase II presentation; and the jury still awarded compensatory damages and punitive damages notwithstanding defense counsel's plea for restraint. On this record, the Court is not persuaded that the Phase II verdict was the product of incurable prejudice or that substantial justice requires a new trial.

## I.    Legal Standard

Federal Rule of Civil Procedure 59(a)(1)(A) allows a court, after a jury trial, to grant a new trial "on all or some of the issues" for any reason for which a new trial has historically been granted in an action at law. A new trial may be warranted when the verdict is against the great weight of the evidence, the damages award is excessive or inadequate, the trial was unfair, or prejudicial error affected the jury's verdict. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *Pagan v. Shoney's Inc.*, 931 F.2d 334, 336 (5th Cir. 1991) (citing *Lucas v. Am. Mfg. Co.*, 630 F.2d 291, 293 (5th Cir. 1980)). But the remedy remains extraordinary. *E.g., Karim v. Finch Shipping Co.*, 111 F. Supp. 2d 783, 784 (E.D. La. 2000) ("A motion for new trial pursuant to Rule 59 is an extraordinary remedy that should be used sparingly.").

Where the asserted error is improper closing argument, the standard is more focused. A new trial may be warranted when improper closing argument "irreparably prejudices" the jury's verdict. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012) (quoting *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir. 1988)); *see also Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 313–14 (5th Cir. 2024). Argument may become improper when counsel asserts material facts that are false or unsupported by the record, misstates the law, asks the jury to decide the case on passion or prejudice rather than evidence, or otherwise uses tactics that undermine the fairness of the proceeding. *See In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 285–86 (5th Cir. 1975).

At the same time, closing argument is not confined to sterile recitation. Counsel are afforded room for "expressive language" and a measure of "oratory and hyperbole." *United States v. Boyd*, 773 F.3d 637, 645 (5th Cir. 2014) (citing *United States v. Thompson*, 482 F.3d 781, 786 (5th Cir. 2007)). Trials—especially damages trials involving alleged constitutional injuries—are not bloodless. Lawyers may press reasonable inferences from the evidence and challenge the opposing party's narrative. But that latitude the Court affords to the parties has its limits.

The Court evaluates the challenged remarks collectively and in context. *Nissho-Iwai*, 848 F.2d at 619. That context includes the nature of the remarks, whether they were isolated or repeated, whether the opposing party objected, how the Court ruled on any objection, whether the Court gave curative instructions, whether the jury charge properly framed the issues, whether the complaining party had a meaningful chance to respond, and whether the

3

verdict itself suggests that the jury was carried away by passion or prejudice. *See id.*; *Clapper*, 95 F.4th at 314.

Preservation, though not categorically required, is critical. Ordinarily, a party must object to improper argument when it occurs so that the trial court can correct any problem before the jury deliberates. *Nissho-Iwai*, 848 F.2d at 619. The Fifth Circuit recognizes a narrow exception when unobjected-to argument is so obvious and serious that it affects substantial rights and threatens a miscarriage of justice. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778 (5th Cir. 2009); *Edwards*, 512 F.2d at 286. But that exception is narrow for good reason. A timely objection allows the Court to stop the argument, strike the statement, remind the jury that lawyer argument is not evidence, or give tailored, curative instructions. A party generally may not remain silent, await the verdict, and then seek a second trial based on an argument the Court could have addressed in real time.

## II. Discussion

### A. Counsel's Statements Concerning the Defendants' Finances and Midland Independent School District Do Not Warrant a New Trial.

Plaintiffs' main complaint concerns the following passage from Defendant Weaver's closing argument:

> Lieutenant Brunner and Officer Weaver each have families and children. Whatever your verdict is will affect their children. This isn't them suing Midland Independent School District, where they say oh, we have a fund balance, and we can pay it. This isn't them suing a police department that the Government says well, we've got money. We can tax and pay for it. They're suing these two individuals. It's coming out of their savings for their children, if they have savings for their children. It's coming out of their kids' 401K. It's coming out of—or their 401K. Maybe their child's 529 plan or whatever. They're trying to save up for their kids to go to college.

Doc. 255 at 52:3–15.

Plaintiffs are correct that this was risky advocacy. Appeals to sympathy based on a defendant's family circumstances have limited, if any, proper role in a damages verdict. *Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976); *Clapper*, 95 F.4th at 313–15 (5th Cir. 2024); *Edwards*, 512 F.2d at 285–86. Nor should counsel invite jurors to calculate damages based on a potentially legally inaccurate image of judgment collection. Federal Rule of Civil Procedure 69 generally looks to state procedure for execution of money judgments, and Texas law protects certain retirement and qualified savings interests from attachment. *See* Fed. R. Civ. P. 69(a); Tex. Prop. Code § 42.0021. To the extent counsel suggested that a judgment would be collected directly from protected retirement or qualified college-savings accounts, that suggestion was not a proper statement of law.

The Court also understands Plaintiffs' concern that counsel's reference to MISD and governmental funds could have created an incomplete impression. The jury heard that this was not a suit against MISD or a police department. Doc. 255 at 52:7–9. Literally, that was true: by the time of trial, the claims against MISD had been dismissed and the case proceeded against only the two individual Defendants. But Plaintiffs point out that MISD was initially sued and at least part of the judgment would be covered by the Texas Association of School Boards Risk Management Fund. Doc. 248 at 3, 76. Thus, although the statement was literally true insofar as MISD was no longer a party, counsel's emphasis that Plaintiffs were suing "these two individuals"—not "Midland Independent School District, where they say oh, we have a fund balance, and we can pay it"—together with counsel's

references to Defendants' children, retirement savings, and 529 plans, risked implying more about Defendants' personal financial exposure than the record fairly established.

Still, the Court cannot evaluate the comments in isolation. Several contextual facts keep the challenged statements from justifying a new trial.

First, the statements were not wholly divorced from proper Phase II issues. The jury was instructed that, when considering punitive damages, it could consider the financial resources of the Defendants. Doc. 240 at 8. That instruction did not permit counsel to supply unsupported facts about Defendants' finances, but it did mean that Defendants' financial resources were not categorically irrelevant to the punitive-damages question.

Second, the record does not support Plaintiffs' broadest characterization that counsel falsely told the jury Defendants had no protection from any judgment. Counsel did not directly represent that no coverage, indemnity, or reimbursement arrangement existed. Plaintiffs read that implication into the argument, and the implication is understandable. But the argument was also susceptible to a narrower reading: punitive damages were being sought against individual Defendants, punitive damages would be assessed against those Defendants personally, and MISD was no longer a party to the case. Defendants also represented in their briefing that punitive damages were not covered by the policy Plaintiffs referenced. Doc. 248 at 76. Thus, at least as to punitive damages, counsel's suggestion of personal financial exposure was not entirely incorrect. Plaintiffs dispute whether that fully answers the point because compensatory damages were also at issue and because MISD might indemnify Defendants outside the policy. *Id.* None of those coverage or indemnity details, however, was before the jury. That cuts both ways: counsel should not have invited

6

speculation about Defendants' personal exposure, but Plaintiffs also did not object or ask the Court to correct any resulting confusion. The dispute therefore underscores why the challenged argument was incomplete and potentially misleading—not why it was so plainly false and incurable that Rule 59 requires a new trial despite the absence of a contemporaneous objection.

Third, Plaintiffs did not object. Had Plaintiffs objected when counsel referenced children or savings plans, the Court could have addressed the issue immediately. It could have instructed the jury that sympathy for any party's family was not a proper basis for damages. It could have reminded the jury that counsel's statements about judgment collection were not evidence and that the jury's task was to answer the damages questions under the instructions. Or it could have forbidden further argument along that line. Plaintiffs instead allowed the argument to continue, took their rebuttal, and then raised no objection even after the jury retired, when the Court asked whether counsel had anything to take up outside the jury's presence.

Plaintiffs' motion notes that counsel's failure to object was attributable to fatigue. *Id.* at 6 n.4. The Court appreciates that trial is exhausting, especially for a solo practitioner trying an emotionally charged case against multiple defense counsel. But fatigue does not absolve counsel of their failure to object. The preservation rule exists precisely because the trial court can often fix problems as they arise. And a party who does not request that relief bears a heavier burden after verdict.

Fourth, the jury was properly instructed. The Court instructed the jury that "[t]he statements of counsel are not evidence; they are only arguments," that the jury "must

distinguish between the arguments of counsel and the evidence on which those arguments rest," and that "[w]hat the lawyers say or do is not evidence." Doc. 240 at 2. Juries are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). That presumption is not irrebuttable, but Plaintiffs have not overcome it here.

Fifth, Plaintiffs had the last word. Although the challenged comments came late in defense counsel's closing, Plaintiffs still had rebuttal. In that rebuttal, Plaintiffs' counsel expressly reminded the jury that unsupported attorney argument is "just lawyer-speak" and "not evidence." Doc. 255 at 53:25–54:2. He did so while responding to defense counsel's statements about whether a teacher could continue working with a flagged certificate. *Id.* at 53:21–54:7. Plaintiffs did not use rebuttal to address savings account or MISD comments, but they had the opportunity to do so. The existence of that opportunity weighs against a finding that the challenged remarks were beyond repair.

Finally, the verdict itself does not show that the jury was overwhelmed by passion or sympathy for Defendants. Defendant Weaver's counsel argued that this was not the sort of case that warranted punitive damages and that punitive damages punish people who intend to hurt people. *Id.* at 52:16–23. The jury nevertheless awarded damages, including punitive damages—including on one claim where they found only nominal damages. Doc. 241 at 1–4. That does not prove that counsel's argument concerning the financial conditions of the Defendants had no effect. Jurors can be influenced at the margins. But Rule 59 requires more than speculation that the award might have been higher without the challenged statements. The verdict shows that the jury did not simply adopt Defendants' damages position or refuse to punish Defendants because of counsel's appeal.

For these reasons, the challenged remarks do not satisfy the narrow standard for a new trial based on unobjected-to closing argument.

### B. The Remaining Challenged Statements Do Not Change the Result.

Plaintiffs also identify several additional statements from Defendant Weaver's closing argument. Considered individually or collectively with the prior statements, these additional statements do not warrant a new trial.

First, Plaintiffs challenge counsel's statement that Plaintiffs were "asking for over a million dollars." Plaintiffs contend that this improperly suggested a settlement demand in this case. Doc. 248 at 2, 4. But the Court is not persuaded that this statement violated the Court's limine rulings or caused incurable prejudice. The record indicates that the grievance demand was contained in Plaintiffs' own exhibit and that the issue was explored at trial. *E.g.,* Doc. 272 at 136:9–21; Doc. 274 at 34:1–6. Further, counsel did not expressly characterize the figure as a settlement demand in this case. The statement could have been clearer, but any ambiguity could have been corrected by objection or rebuttal. And, again, Plaintiffs did not object.

Second, Plaintiffs challenge counsel's statements about Megan McMurry's teaching certificate. Counsel argued that a flagged certificate did not prevent her from teaching, that some teachers continue teaching while their certificates are flagged, and that Texas communities need teachers. Doc. 255 at 48:10–49:8. At least some of that argument appears to have rested on counsel's asserted experience representing school districts rather than on record evidence. *Id.* at 48:11–13 ("I've worked with school districts. That's all I do. I defend school district employees for school districts sometimes. But the fact is there are a lot of

9

teachers out there who continue to teach while their certificate is flagged . . .”). The Court does not approve of counsel using closing argument to become an unsworn witness. But again, Plaintiffs did not object. More importantly, however, Plaintiffs' counsel directly responded in rebuttal. He told the jury that Defendants had not presented a witness to support the flagged-certificate argument and reminded the jury that lawyer argument is not evidence. *Id.* at 53:21–54:2. That response, coupled with the Court's instruction that lawyer argument is not evidence, weighs against finding that the unsupported assertion created incurable prejudice. *Nissho-Iwai*, 848 F.2d at 619; *Thomas*, 627 F.3d at 158.

Third, Plaintiffs point to the Court's limine rulings and contend that defense counsel violated Defendant Brunner's limine request concerning wealth and insurance. Doc. 248 at 7–8. But even assuming the ruling applied to all parties, the challenged statements do not justify a new trial. Counsel did not mention insurance and did not expressly compare Plaintiffs' wealth to Defendants'. The references to individual resources and family savings were improper in tone and potentially misleading in substance, as already explained. But the violation, if any, was not preserved by contemporaneous objection and was not so obvious and incurable that it requires a new trial.

Fourth, Plaintiffs suggest that the cumulative effect of the argument requires relief. The Court has considered the statements collectively. Doc. 248 at 2. Taken together, they show that Defendant Weaver's closing argument was aggressive and, at points, tiptoed near or across the line of what this Court would deem appropriate. But the aggregate record also includes the absence of objections, the Court's instructions, Plaintiffs' rebuttal, the jury's damages awards, and the limited duration of the challenged remarks. The cumulative-effect

10

argument therefore fails for the same reason as Plaintiffs' individual objections: the Court is not convinced that the verdict was irreparably prejudiced when considered in context.

### C. Plaintiffs' Challenge to the Court's Limine Rulings Does Not Warrant a New Trial.

Plaintiffs separately argue that the Court's limine rulings prevented them from presenting relevant details about the post-seizure criminal proceedings, including Megan McMurry's prosecution and acquittal. Plaintiffs contend that more detail would have supported their theory that Defendants acted maliciously or with reckless indifference and would have increased the damages award. Doc. 248 at 7–8.

The Court rejects that ground as well.

The Court's pretrial order did not categorically bar Plaintiffs from referencing the criminal matter for every purpose. The Court permitted limited use of the acquittal during Phase II to avoid juror confusion or materially incomplete information, so long as the reference was consistent with Rules 401 and 403. Doc. 210 at 2–4. The order also told Plaintiffs that, if they intended to make such a reference, they must approach the bench so the Court could set appropriate guardrails. *Id.* at 4.

Mention of the criminal matter was limited for a reason. The criminal case carried probative value for some issues, but it also carried obvious risks: mini-trials over charging decisions, prosecutorial conduct, post-seizure events, and the reasons for acquittal. Phase II was a damages phase following liability findings on specific constitutional claims. The Court had to balance Plaintiffs' desire to tell a broader narrative against the risk of confusing the issues, unfairly prejudicing Defendants, or turning the damages phase into a second trial about the criminal prosecution.

11

Nor is this a case in which the Court made a definitive, categorical ruling excluding all evidence concerning the criminal matter. The pretrial order permitted limited references to the acquittal during Phase II if Plaintiffs first approached the bench so the Court could set appropriate guardrails. Plaintiffs did not invoke that procedure, identify the particular criminal-case evidence they sought to introduce, or make a developed record showing the purpose for which the evidence was offered and why its probative value was not substantially outweighed by Rule 403 concerns. A general post-verdict assertion that Plaintiffs should have been allowed to present "more details" is not enough.

The verdict also undercuts the claim of prejudice. The jury found Defendants liable in Phase I. Doc. 236 at 1–2. In Phase II, the jury had enough evidence to award compensatory and punitive damages. Doc. 241 at 1–4. The jury therefore was not prevented from finding that Defendants acted with the culpable state of mind required for punitive damages. Plaintiffs' belief that additional evidence concerning the criminal case would have produced a higher award is speculative.

Thus, the Court's limine rulings do not warrant a new Phase II trial.

### D. The Court Need Not Decide the Proper Scope of Any Retrial.

The parties also dispute whether any new trial should be limited to Phase II, whether damages can be retried without liability, and whether any retrial should include both Defendants even though Plaintiffs focus on statements by Defendant Weaver's counsel. Because the Court concludes that no new trial is warranted, it need not decide those questions. Rule 59 permits partial new trials in appropriate circumstances, but a court should not order a partial retrial unless the issue to be retried is sufficiently distinct and separable

from the others that retrial of that issue alone may occur without injustice. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931). Those questions would matter only if Plaintiffs had shown entitlement to a new trial. They have not.

### III.    Conclusion

The Court does not minimize the importance of proper closing argument. Jurors decide cases based on evidence and law, not sympathy for a party's children, speculation about protected assets, or unsworn factual assertions by lawyers. In the future, counsel should take care not to blur those lines.

But Rule 59 sets a demanding standard, especially where the challenged argument drew no contemporaneous objection. Considering the challenged statements in the context of the full Phase II proceeding, the Court's jury instructions, Plaintiffs' opportunity for rebuttal, the absence of a timely objection, and the jury's actual damages findings, the Court concludes that Plaintiffs have not shown irreparable prejudice, a miscarriage of justice, or any other basis for a new trial.

Accordingly, Plaintiffs' Motion for New Trial (Phase II) is **DENIED**.

It is so **ORDERED**.

SIGNED this 27th day of May, 2026.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE